# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

DERRICK W. WALKER,

    Plaintiff,

v.

HOMER BRYSON; DOUG WILLIAMS; ERIC SMOKES; and CARL FOUST,

    Defendants.

CIVIL ACTION NO.: 6:15-cv-57

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Smith State Prison in Glennville, Georgia, submitted a Complaint in the above captioned action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement. (Doc. 1.) The Court has conducted the requisite frivolity review of that Complaint. I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against Defendant Bryson and that the Court **DISMISS** Plaintiff's claims for monetary damages against all Defendants in their official capacities. I further **RECOMMEND** that the Court **DISMISS** all of Plaintiff's claims for compensatory and punitive damages. However, Plaintiff has stated viable claims against all Defendants for injunctive relief and nominal damages under the Eighth Amendment and those claims shall proceed. Consequently, the Court hereby **ORDERS** that the Complaint and Amended Complaint and this Order be served on Defendants Williams, Smokes, and Foust. The Court provides additional instructions to Plaintiff and Defendants pertaining to the future litigation of this action, which the parties are urged to read and follow.

# BACKGROUND[1]

In this action, Plaintiff alleges that he is at severe risk of attack from his fellow inmates because he has disowned his status as a member of the "Goodfellas Gang." (Docs. 1, 13.) Plaintiff states that he arrived at Smith State Prison from Georgia State Prison on August 4, 2014. (Doc. 13, p. 3.) Prior to his arrival at Smith State Prison, Plaintiff disowned his membership in the Goodfellas Gang and worked with the administration at Georgia State Prison as an informant (apparently against the Goodfellas Gang). Id. Upon his arrival at Smith State Prison, a correctional officer explained to Defendant that he would be place in the Tier 2 facility because all Goodfellas members were housed in that facility. (Id., at pp. 3–4.) The officer explained that per Defendant Stanley Williams, the Warden of Smith State Prison, Plaintiff would not be allowed to be housed in another dorm. (Id. at p. 4.) Plaintiff explained that he severed all of his ties with the Goodfellas in October of 2013 and that he was not housed in the Tier 2 program at Georgia State Prison. Id. The officer explained that Defendant Williams and Defendant Eric Smokes, the unit manager, assign the inmates' locations and that Plaintiff's assignment was "out of her hands." Id.

Plaintiff then spoke with Defendant Smokes. (Id. at p. 5.) Plaintiff explained to Smokes that he was no longer a member of the Goodfellas gang and that leaders of the gang, Abdul Williams and Jonathan McClendon, had "put a contract hit on [Plaintiff's] life." Id. Plaintiff was placed in a single man cell in the Tier 2 program and explained the policies for contesting Tier 2 Administrative Segregation Status. (Id. at pp. 5, 15-16.)

On August 6, 2014, Plaintiff spoke with a "multi-functional officer" and Defendant Williams regarding his placement in Tier 2. (Id. at p. 6.) He asked Defendant Williams when he

---

[1] The below recited facts are taken from Plaintiff's Complaint (doc. 1) and Amended Complaint (doc. 13) and are accepted as true, as they must be at this stage.

would receive his administrative segregation hearing per the Prison's standard operating procedure. Id. Warden Williams did not respond. Id. Plaintiff made several more attempts in August 2014 to speak with Williams and Smokes regarding this placement in Tier 2 but was unsuccessful. Id. On September 10, 2014, Plaintiff spoke with Defendant Williams and again raised his safety concerns with being placed in Tier 2. (Id. at pp. 6–7.) Defendant Williams told Plaintiff that as a member of the Goodfellas, Plaintiff would not get a hearing to contest his placement in Tier 2. Id.

Plaintiff has attached to his Complaint and Amended Complaints several documents regarding his attempts to convey to prison officials his concerns regarding threats from the Goodfellas and his placement in Tier 2. For example, on September 12, 2014, Plaintiff filled out a sworn statement in which he explained to the Prison's Security Threat Group Investigator that he had severed his ties with the Goodfellas and that the gang had ordered a hit on him. (Doc. 1-5.) On November 14, 2014, Plaintiff completed a form, sent to him by Defendant Carl Foust, in which he explained to Defendant Foust that he had renounced his membership in Goodfellas and provided Foust information regarding the Goodfellas' activities as required by the Prison's Security Threat Group renunciation process. (Doc. 1-4.) On February 2, 2015, Plaintiff wrote to Defendant Smokes and again expressed his concerns regarding the Goodfellas. (Doc. 1-6.) He stated that he has received several messages threatening harm and asked that prison administration take "reasonable measures" to "abate the risk." Id. On February 10, 2015, Defendants Foust and Smokes spoke with Plaintiff and denied his request for protective measures. Id. Plaintiff continued to write the prison administration in March and April of 2015 expressing his concerns of retribution from the Goodfellas including a list of specific inmates

that posed harm to Plaintiff. (Docs. 1-12, 1-13, 1-14, 1-15.) However, according to Plaintiff, Defendants have not taken any measures to address the continuing threats to his safety.

Plaintiff requests that the Court issue injunctive relief ordering Defendants to protect him from the substantial risk of serious harm posed by the Goodfellas. (Doc. 13, p. 12.) He also requests compensatory damages in the amount of $25,000, punitive damages in the amount of $5,000 and nominal damages in the amount of $1,500.

**STANDARD OF REVIEW**

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set

of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**DISCUSSION**

**I.     Dismissal of Official Capacity Claims for Monetary Damages**

Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer for monetary damages in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as officers at a state penal institution. Accordingly, the Eleventh Amendment immunizes these actors from suit for monetary damages in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims for monetary damages against Defendants in their official capacities, and these claims should be **DISMISSED**.

However, as a general principle, though the Eleventh Amendment insulates states from suit in federal court, it does not insulate state officials acting in their official capacities from claims seeking prospective injunctive relief. Welch v. Laney, 57 F.3d 1004, 1009 (11th Cir. 1995); see also, McClendon v. Georgia Dep't of Cmty. Health, 261 F.3d 1252, 1256 (11th Cir. 2001) ("The Young doctrine permits federal courts to entertain suits against state officers seeking prospective equitable relief to end continuing violations of federal law."); Bradley v. Hart, No. CV513-127, 2015 WL 1032926, at *4 (S.D. Ga. Mar. 9, 2015), appeal dismissed (July 8, 2015) (quoting Smith v. Fla. Dep't of Corr., 318 F. App'x 726, 728 (11th Cir.2008) ("To

be clear, a 'state defendant[ ] sued in [his] official capacity for monetary damages under § 1983 [is] immune from suit under the Eleventh Amendment, [but he is] not immune from claims seeking prospective declaratory or injunctive relief.'") Accordingly, the Eleventh Amendment does not require dismissal of Plaintiff's claims against Defendants in their official capacity seeking prospective injunctive relief.

**II.      Supervisory Liability Claims**

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior.[2] Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears Plaintiff wishes to hold Defendant Homer Bryson liable based solely on his position as the Commissioner of the Georgia Department of Corrections. (Doc. 1, p. 2.) His statement of facts does not even mention Defendant Bryson much less establish how he was involved in violating his Eighth Amendment Rights. (Id. at p. 3–4.) Consequently, Plaintiff has

---

[2] The principle that respondeat superior is not a cognizable theory of liability under Section 1983 holds true regardless of whether the entity sued is a state, municipal, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129-30 (11th Cir.1992).

7

not established that Defendant Bryson had any personal involvement in the violation of his constitutional rights or that there is any causal connection between his conduct and the violation. Thus, the Court should **DISMISS** Plaintiff's claims against Defendant Bryson.

### III. Dismissal of Compensatory and Punitive Damages Claims

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citing Harris v. Garner, 216 F.3d 970, 976-79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532.

In Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009), the Eleventh Circuit stated that, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated. Pursuant to 42 U.S.C. § 1997e(e), in order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a *de minim[i]s* physical injury." Id. (internal citations omitted) (alterations in original). Consequently, a prisoner that has not suffered any physical injury cannot recover compensatory or punitive damages. Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA because the plaintiffs failed to meet § 1997e(e)'s

8

physical injury requirement."); Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) ("Plaintiff seeks nominal, compensatory, and punitive damages. It is clear from our case law, however, that the latter two types of damages are precluded under the PLRA.") abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011).

However, the Eleventh Circuit has also stated that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Williams v. Brown, 347 F. App'x at 436 (quoting Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003)). "Thus, a prayer for nominal damages is not precluded by § 1997e(e)." Id. (quoting Smith v. Allen, 502 F.3d at 1271.

In this case, Plaintiff has not alleged that he has suffered any physical injury due to Defendants' alleged constitutional violations. Accordingly, the Court should **DISMISS** his claims for compensatory and punitive damages pursuant to 42 U.S.C. § 1997e(e). However, Section 1997e(e) does not bar Plaintiff's claims for nominal damages, and those claims will proceed.

**IV.    Eighth Amendment Claims**

In order to state a claim for relief under Section 1983, Plaintiff must satisfy two elements. First, he must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, Plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id.

The Eighth Amendment imposes duties on prison officials including the duty to take reasonable measures to ensure the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 828

(1994). This right to safety is violated when prison officials show a deliberate indifference to a substantial risk of serious harm. Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing Farmer, 511 U.S. at 828). In order to prevail on such a claim, the plaintiff must establish the following: (1) there was a substantial risk of serious harm to him; (2) defendant showed a deliberate indifference to this risk; and (3) there is a causal connection between the defendant's acts or omissions and the alleged constitutional deprivation. Id.

"To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Purcell, 400 F.3d at 1319–20). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights." Smith, 368 F. App'x at 14. In other words, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010).

Prison officials are not held liable for every attack by one inmate upon another, Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986), nor are they guarantors of a prisoner's safety. Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990). Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

Like any deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective inquiry to establish a failure to protect claim. Chandler v. Crosby, 379 F.3d 1278, 1289–90 (11th Cir. 2004). Under the objective component, a plaintiff must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8 (1992). As for the subjective component, "the prisoner must prove that the prison official acted with 'deliberate indifference.'" Miller v. King, 384 F.3d 1248, 1260-61 (11th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). To prove deliberate indifference, the prisoner must show that prison officials "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition at issue. Id. (quoting Chandler, 379 F.3d at 1289–90).

"It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment[ ] Clause." McCoy v. Webster, 47 F.3d 404, 408 (11th Cir.1995). Furthermore, "[t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Id. (alteration in original) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986). In other words, "[m]erely negligent failure to protect an inmate from attack does not justify liability under § 1983." Stuckey v. Thompson, No. CV405–216, 2007 WL 1035134, *5 (S.D. Ga. Mar.29, 2007) (quoting Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir.1990)).

An inmate that faces a real and immediate threat need not wait to be the victim of an attack to state a claim for prospective injunctive relief. "We bear in mind . . . that an inmate does not have to await the consummation of threatened injury to obtain preventive relief." Smith v. Arkansas Dep't of Correction, 103 F.3d 637, 644 (8th Cir. 1996) (upholding district court's grant of injunctive relief to inmate on duty to protect claim) (internal quotation and alteration omitted)

11

(quoting Farmer v. Brennan, 511 U.S. at 845); see also, Bullock v. Barham, 23 F. Supp. 2d 883, 885 (N.D. Ill. 1998) ("Even though Mr. Bullock is currently in protective custody, Mr. Bullock alleges that the defendants have previously ignored the threats against his life and have transferred him back to the general population on several occasions. Mr. Bullock's action for injunctive relief will not be dismissed.").

Plaintiff's allegations, when accepted as true and construed in the light most favorable to him, state plausible claims that Defendants have ignored, and continue to ignore, substantial risks of serious harm to his safety. Plaintiff has repeatedly advised Defendants that members of the Goodfellas Gang have threatened to take his life due to his severance of ties with the gang and cooperation against the gang. He has identified specific members of the gang that have called for a "hit" on him as well as inmates that are members of the gang and housed in the same facility as him. Defendants have ignored Plaintiff's repeated requests for reasonable measures to protect him from real and imminent threats against his life. According to Plaintiff, instead of addressing the risk of harm, Defendants have continued to house Plaintiff in a unit with Goodfellas gang members. Consequently, Plaintiff's claims that Defendants have violated his Eighth Amendment Rights and his requests for prospective injunctive relief and nominal damages to remedy those violations survive frivolity review.

## V. Request for Preliminary Injunctive Relief

Plaintiff has sought preliminary injunctive relief from the Court. To be entitled to a preliminary injunction, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest.

Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005). In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." Horton v. City of Augustine, Fla., 272 F.3d 1318, 1326 (11th Cir. 2001).

Furthermore, the Court must provide notice to the adverse party before issuing a preliminary injunction. Fed. R. Civ. P. 65(a). Of course, Defendants have received no such notice as they have not been served with this action. The Court will hear from Defendants before addressing Plaintiff's request for preliminary injunctive relief. To that end, the Court hereby **ORDERS** Defendants to file a response to Plaintiff's request for injunctive relief on or before the date that Defendants file their initial responsive pleading to Plaintiff's Complaint and Amended Complaint.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against Defendant Bryson and that the Court **DISMISS** Plaintiff's claims for monetary damages against all Defendants in their official capacities. I further **RECOMMEND** that the Court **DISMISS** all of Plaintiff's claims for compensatory and punitive damages.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be

served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND REMAINING DEFENDANTS

Plaintiff's allegations arguably state colorable claims for nominal damages and prospective injunctive relief against all Defendants for violation of the duty to protect under the Eighth Amendment. Consequently, a copy of Plaintiff's Complaint (doc. 1) and Amended Complaint (doc. 13) and a copy of this Order shall be served upon Defendants by the United States Marshal without prepayment of cost. As set forth in Section IV above, Defendants are **ORDERED** to file a response to Plaintiff's request for preliminary injunctive relief. The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

**INSTRUCTIONS TO DEFENDANTS**

Because Plaintiff is proceeding *in forma pauperis,* the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the

witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the

pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

### ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by

reliance on the conclusory allegations contained within the complaint.  Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 31st day of December, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA